UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

WESTERN RESOURCES LEGAL
CENTER,

                        Plaintiff,

     v.

NATIONAL OCEANIC AND
ATMOSPHERIC ADMINISTRATION and
NATIONAL MARINE FISHERIES
SERVICE,

                   Defendants.

Case No. 3:19-cv-01119-AC

OPINION AND ORDER

_____

ACOSTA, Magistrate Judge:

      Plaintiff Western Resources Legal Center ("WRLC") brings this action against Defendants

National Oceanic Atmospheric Administration and National Marine Fisheries Service

(collectively, "NOAA") for violations of the Freedom of Information Act ("FOIA").   On May 8,

2020, both parties filed motions for summary judgment.   For the following reasons, the court

grants Plaintiff's motion and denies Defendants' motion.

Page 1 – OPINION AND ORDER

*Background*

Western Resources Legal Center ("WRLC") is a non-profit legal education organization associated with the Lewis and Clark Law School.    (Decl. Caroline Lobdell ("Lobdell Decl.") Ex. A at 2, ECF No. 42.)    The National Marine Fisheries Service ("NMFS") is a division of the National Oceanic and Atmospheric Administration ("NOAA").    (Decl. Ellen Sebastian ("Sebastian Decl.") ¶ 1, ECF No. 29.)    NOAA is an agency within the Department of Commerce. (Def.'s Answer ¶ 12, ECF No. 11.)    On October 28, 2016, WRLC submitted a FOIA request to NMFS. (Lobdell Decl. ¶ 2.)

WRLC requested ten categories of records related to a NMFS document, entitled the "Technical Guidance for Assessing the Effects of Anthropogenic Sound on Marine Mammal Hearing:  Underwater Acoustic Thresholds for Onset of Permanent and Temporary Threshold Shifts" ("Technical Guidance").    (Lobdell Decl. Ex A. at 1.) Specifically, WLRC requested information not cited in the final version of the Technical Guidance, "including scientific documents, studies and reports."    (Lobdell Decl. Ex. A at 1.) WRLC also sought correspondence about the Technical Guidance sent or received by sixteen individuals, including nine NOAA employees.    (Lobdell Decl. Ex A. at 2.)

NOAA's FOIA Central Office determined the request required subject matter experts to identify responsive records.    (Decl. Mark H. Graff ("Graff Decl.") ¶ 6, ECF No. 48.)    Thus, NOAA assigned the request to NMFS.    (Graff Decl. ¶ 6.)    NMFS' Office of Protected Resources ("OPR") received the request on December 15, 2016.    (Sebastian Decl. ¶¶ 1, 5.) NOAA acknowledged WRLC's request in a December 19, 2016 letter.    (Lobdell Decl. ¶ 3.)    NOAA's letter stated the agency was extending the FOIA response deadline by ten business days for unusual circumstances under 15 C.F.R. § 4.6(d)(2).    (Lobdell Decl. Ex. B at 2.)    NOAA described the

Page 2  – OPINION AND ORDER

unusual circumstances as "the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records that are the subject of a single request; and the need for consultation, which shall be conducted with all practical speed, with another component or Federal agency having a substantial interest in the determination of the request." (Lobdell Decl. Ex. B. at 2.) NOAA anticipated it would complete the request by January 27, 2017. (Lobdell Decl. Ex. B at 2.)

On March 2, 2017, NOAA requested WRLC "modify the scope of WRLC's FOIA request to seek records from the period of July 2015 to July 2016," and "receive responsive records in interim releases due to the volume of records and the fact that NOAA must confer with other federal agencies." (Lobdell Decl. ¶ 4.) WRLC agreed. (Lobdell Decl. ¶ 4.) On March 24, 2017, NOAA provided WRLC with a link to publicly available information related to WRLC's request. (Lobdell Decl. ¶ 5.)

OPR identified seven offices and ten individuals who potentially possessed responsive records. (Graff Decl. ¶ 8.) OPR developed a search plan and decided subject matter experts in each respective office would conduct searches for responsive records. (Graff Decl. ¶ 9.)

On April 4, 2017, NOAA issued a memorandum directing employees to search for records related to WLRC's request. (Sebastian Decl. Ex. B) The memorandum instructed recipients to submit "all responsive agency records within the specified date" by April 28. (Sebastian Decl. Ex. B at 2.) The memorandum recommended search terms for use "singly or in a combination." (Sebastian Decl. Ex. B. at 2.) Although NOAA's FOIA Central Office had the capability to search all employee emails, "line offices do not have the same central search capabilities and do not have permission to run keyword searches over the email messages of all NOAA employees." (Graff Decl. ¶ 5.)

Page 3 – OPINION AND ORDER

The memorandum directed employees to conduct email searches using a "cascade" approach "designed to limit duplication of responsive emails and records from the main record custodian and Subject Matter Expert Amy Scholik." (Sebastian Decl. ¶ 12.) The memorandum displayed three hierarchies labeled as "cascades." (Sebastian Decl. Ex. B. at 3.) Each cascade listed three to five individuals. (Sebastian Decl. Ex. B. at 3.) Amy Scholik-Schlomer ("Scholik-Schlomer"), the Technical Guidance's author, placed herself at the top of each cascade. (Decl. Amy Scholik-Schlomer ("Scholik-Schlomer Decl.") ¶¶ 1, 3, 12, ECF No. 30.) The memorandum stated, "records sent to or from persons higher on the cascade, may be excluded from the search of persons lower in the cascade." (Sebastian Decl. Ex. B. at 3.) Scholik-Schlomer explained, "[as] you go down the cascade, the individuals at the bottom are increasingly unlikely to have responsive records that were not already collected from individuals higher on the cascade." (Scholik-Schlomer Decl. ¶ 12.) All employees listed in the "cascades" searched for responsive records. (Scholik-Schlomer Decl. ¶ 14; Decl. Jolie Harrison ¶ 7, ECF No. 31; Decl. Jason Gedamke ¶ 10, ECF No. 32; Decl. Manuel Castellote Morales ¶ 5, ECF No. 33; Decl. Alicia Bishop ¶ 10, ECF No. 34; Decl. Deborah Ben-David ¶ 7, ECF No. 35; Decl. Leila Hatch ¶ 7, ECF No. 36; Sebastian Decl. ¶ 15.) One NOAA custodian, who was not listed on the cascades, also searched for responsive records. (Decl. Alicia Bishop ("Bishop Decl.") ¶ 6-7, ECF No. 34.)

WRLC received NOAA's first document release on either March 30, 2017, or July 3, 2017. (Lobdell Decl. ¶ 6.) In its first interim response, NOAA stated, "We continue to process your request for additional responsive records." (Sebastian Decl. Ex. D at 2.) NOAA issued a second interim response on September 27, 2017. (Sebastian Decl. Ex. E.) The second response stated the first release occurred on March 30, 2017. (Sebastian Decl. Ex. E at 2.) NOAA issued a third interim response on January 9, 2018. (Sebastian Decl. Ex. F.) The third response letter indicated

Page 4 – OPINION AND ORDER

that the first response occurred on July 3, 2017.  (Sebastian Decl. Ex. F.)  NOAA issued three additional interim responses on March 6, 2018, April 9, 2018, and June 18, 2019.  (Sebastian Decl. Ex. J at 3.)  Each interim responses stated:  "Although we do not consider this a denial of your request, you have the right to file an administrative appeal if you are not satisfied with our response to your FOIA request."  (Sebastian Decl. Exs. D-I.)

In a September 20, 2018 email, a NOAA employee asked WRLC via email if it would like to keep its FOIA request open.  (Lobdell Decl. Ex. H. at 2).  WRLC responded and attached a list of outstanding documents WRLC had not received.  (Lobdell Decl. Ex. H. at 1.)  NOAA acknowledged WRLC's list on October 16, 2018.  (Lobdell Decl. Ex. I at 1.)

WRLC filed this action for declaratory and injunctive relief on July 19, 2019.  (Pl.'s Comp., ECF No. 1.)  WRLC's complaint alleged that NOAA had not provided any records since the sixth interim release on June 18, 2018.  (Pl.'s Comp. ¶ 38.)

On August 8, 2019, the agency's counsel notified WRLC that NOAA had issued a seventh and final response on June 18, 2019.  (Lobdell Decl. ¶ 18.)  WRLC stated it had not received any written correspondence from NOAA in June or July 2019.  (Lobdell Decl. ¶ 18.)  The agency provided a link to the records and attached its final response letter because "it appears that the letter was not transmitted to WRLC."  (Lobdell Decl. Ex. J at 1.)  NOAA's response stated: "To date, NMFS has released 1,730 records, including the 22 records released today.   This is our final response." (Lobdell Decl. Ex. J at 4.)   The letter included information about WRLC's right to file an administrative appeal.  (Lobdell Decl. Ex. J at 4.)

On May 8, 2020, WRLC and NOAA filed cross motions for summary judgment.

*Legal Standard*

A court grants summary judgment when "the movant shows there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). District courts typically resolve FOIA cases on summary judgment. *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 989 (9th Cir. 2016). "When simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Fair Hous. Council of Riverside Cnty., Inc., v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001).

An agency that has withheld records in response to a FOIA request has the burden "to sustain its action." 5 U.S.C. § 552(a)(3)(A). A district court reviews the agency's denial de novo. *Id.* The district court may enjoin an agency from withholding records or order the release of improperly withheld records. *Id.* § 552(a)(4)(B). "In utilizing its equitable powers to enforce the provisions of the FOIA, the district court may consider injunctive relief where appropriate." *Long v. IRS*, 693 F.2d 907, 909 (9th Cir. 1982).

## Discussion

Plaintiffs move for summary judgment on four grounds: (1) NOAA failed to make a timely determination; (2) NOAA failed to promptly produce records; (3) NOAA did not conduct a reasonable search for responsive records; and (4) NOAA provided an inadequate *Vaughn* index. Defendants move for summary judgment on two grounds: (1) WRLC failed to exhaust administrative remedies; and (2) NOAA complied with FOIA by conducting a reasonable search for responsive documents.

I.    NOAA's Untimely Determination Relieved WRLC of its Obligation to Exhaust
      Administrative Remedies

WRLC contends NOAA violated FOIA because the agency failed to issue a timely

determination.  NOAA argues that summary judgment is proper because WRLC failed to exhaust administrative remedies.

An agency that receives a proper FOIA request must determine if it will comply with the request and "immediately" notify the requester of the decision.  5 U.S.C. § 552(a)(6)(A)(i).  The agency must issue its determination within twenty days, excluding weekends and legal public holidays.  *Id.* The agency must notify the requester of its determination in writing.  15 C.F.R. § 4.7(c)(2020).  Interim responses do not constitute determinations.  *Id.*  § 4.7(b).  The twenty-day response period begins "on the date on which the request is first received by the appropriate component of the agency."  5 U.S.C. § 552(a)(6)(A)(ii).  An agency may request a one-time written clarification from the requester.  15 C.F.R. § 4.6(c).

When an agency grants a request in whole or in part, it must notify the requester of any fees charged and of the requester's right to contact seek assistance from the agency.  *Id.* § 4.7(c)(1).  When an agency makes an adverse determination, such as denying a request or determining a record is exempt, the denial must include a brief statement explaining the reasons for the denial.  *Id.* § 4.7(c)(2).  An agency that makes an adverse determination must notify the requestor of his or her right to appeal.  5 U.S.C. § 552(a)(6)(A)(i)(III)(aa).

An agency may extend the twenty-day response period by ten days for "unusual circumstances."  *Id.* § 552(a)(6)(B).  An agency experiences unusual circumstances when:  (1) the agency needs to search for and collect requested records from separate offices, such as field facilities; (2) the agency needs to search for, collect, and examine a voluminous amount of distinct records in a single request; or (3) the agency needs to consult with another agency that has substantial interest in the determination.  *Id.*  The agency must notify the requester in writing of the unusual circumstances that warrant the extension and provide the date when the agency expects

Page 7  – OPINION AND ORDER

to issue a determination.  *Id.*

In general, a requester must exhaust administrative remedies before "seeking judicial redress."  *Citizens for Responsibility & Ethics in Washington v. FEC*, 711 F.3d 180, 182 (D.C. Cir. 2012) ("CREW").  However, if an agency "fails to comply with the applicable time limit provisions" of the FOIA statute, the requester "shall be deemed to have exhausted his administrative remedies with respect to such request."  § 552(a)(C)(i).  In other words, "[t]o trigger the exhaustion requirement, an agency must make and communicate its 'determination' whether to comply with a FOIA request – and communicate 'the reasons therefor' – within 20 working days of receiving he request, or within 30 working days in 'unusual' circumstances."  *CREW*, 711 F.3d at 182 (quoting § 552(a)).

WRLC argues NOAA failed to meet FOIA's statutory deadlines, thereby relieving WRLC of its duty to exhaust administrative remedies.    The court agrees.

A.    *NOAA Failed To Meet Deadline For Making Determination*

NOAA failed to trigger the exhaustion requirement because it did not meet FOIA's thirty working-day limit.  OPR received WRLC's request on December 15, 2016, and acknowledged WRLC's request on December 19, 2016.  (Sebastian Decl. ¶ 5; Lobdell Decl. ¶ 3.)   NOAA notified WRLC that the agency granted itself a ten-day extension for "unusual circumstances," and anticipated completing the request by January 27, 2017.  (Lobdell Decl. Ex. B.)  However, NOAA did not issue its first interim response until March 30, 2017, or July 3, 2017.  (Lobdell Decl. ¶ 6.)  The correspondence's date is unclear, because NOAA's first interim response letter was dated July 3, 2017 (Sebastian Decl. Ex. D at 1.); however, its second interim release letter stated the first interim release occurred on March 30, 2017.  (Sebastian Decl. Ex. E at 2.) Regardless of the discrepancy, NOAA did not issue a determination within the thirty working days

Page 8 – OPINION AND ORDER

permitted under the statute, and therefore, failed to trigger WRLC's duty to exhaust administrative remedies.

        B.      *NOAA Did Not Make a Determination Before WRLC Filed Suit*

       NOAA asserts WRLC was required to exhaust administrative remedies for two reasons. First, NOAA contends its interim responses notified WRLC of its appeal rights. Second, citing *Oglesby v. U.S. Dep't. of Army,* 920 F.2d 57, 61 (D.C. Cir. 1990), NOAA argues that a requester is relieved of its burden to exhaust administrative remedies only until the agency makes a determination, WRLC's duty to exhaust therefore arose when NOAA issued its final response. The court disagrees.

       In *CREW,* the federal Court of Appeals for the District of Columbia ("D.C. Circuit") clarified an agency's obligations when making its determination. An agency determination "must be substantive, not just a statement of future intent to produce non-exempt responsive documents." *CREW*, 711 F.3d at 186. Specifically, an agency must: "(i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *Id.* at 188. FOIA does not require an agency to produce responsive records when it makes its determination; however, an agency cannot "make a general promise to produce non-exempt documents and claim exemptions in the future." *Id.* at 187-88.

       NOAA's interim responses do not constitute determinations. NOAA made six records releases between March 30 or July 2017, and June 2018, each accompanied by letters the agency labeled as interim responses. (Sebastian Decl. Ex. I at 2.) However, a determination must communicate "whether a requester will receive all the documents the requester seeks." *CREW*,

Page 9 – OPINION AND ORDER

711 F.3d at 186.    Although each letter advised WRLC of its right to appeal (Sebastian Decl. Exs. E-I.), the letters did not inform WRLC of "the scope of the documents" the agency intended to produce.    NOAA's interim responses merely conveyed that the agency released the documents, and they listed the exemptions applied to that particular release.    The responses do not inform WRLC of what the agency intended to produce or withhold in response to the entire request.

The agency also failed to issue its determination, in the form of its seventh and final response, before WRLC filed suit.    Under FOIA, an agency must "immediately notify" the requester of the determination in writing.    5 U.S.C. § 552(a)(6)(A)(i).    Although NOAA posted the final records release on its public records website on June 18, 2019, the agency acknowledges that the website's email notification system "was not working properly" after July 2018.    (Def's Mot. Opp'n Pl.'s Mot. Summ. J. at 14, ECF No. 47.)    Moreover, the agency's final response letter "was not transmitted to WRLC" until August 8, 2019.    (Lobdell Decl. Ex. J at 1.) WRLC commenced this action on July 19, 2019.    (Lobdell Decl. ¶ 17.)    Because the agency did not notify WRLC of its determination before WRLC filed its action, the agency failed to trigger WRLC's duty to exhaust administrative remedies before WRLC filed suit.

Accordingly, NOAA's motion for summary judgment based on WRLC's asserted failure to exhaust its administrative remedies is denied, and NOAA's cross-motion for summary judgment on the grounds that its determination was timely is denied.

II.    <u>NOAA Did Not Promptly Produce Records</u>

WRLC further contends NOAA violated FOIA by failing to promptly provide responsive records and by withholding records from the Navy.    An agency that receives a proper request for records must make records "promptly available to any person."    5 U.S.C. § 552(a)(3)(A).    When a request involves voluminous records or requires searching multiple locations, the agency must

Page 10 – OPINION AND ORDER

provide the requester with interim responses, to the extent feasible.   15 C.F.R. § 4.7(b).

If the agency does not make a timely determination, the requester may file an action in district court.   5 U.S.C. § 552(a)(6)(C)(i).   The district court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."   *Id.* § 552(a)(4)(B).   A requester, however, cannot "challenge the individual timeliness of production or the Agency's compliance with statutory or regulatory guidelines with respect to documents that have been produced."   *Community Ass'n for Restoration of the Env't, Inc. v. EPA*, 36 F. Supp. 3d 1039, 1048 (E.D. Wash. 2014).   A district court may allow the agency additional time to review the records if an agency demonstrates that "exceptional circumstances exist and that the agency is exercising due diligence in responding to the request." § 552(a)(6)(C)(i).   A delay that results from "a predictable agency workload of requests," does not typically constitute an exceptional circumstance.   5 U.S.C. § 552(a)(6)(C)(ii).

An agency is not required to produce all records when it makes its determination.   *CREW*, 711 F.3d at 185.   The D.C. Circuit applies the "promptly available" standard based on the circumstances of each case, which usually requires production "within days or a few weeks of a 'determination,' not months or years."   *Id.* at 188.   The court acknowledged that the agency "may still need some additional time to physically redact, duplicate, or assemble for production the documents that it has already gathered and decided to produce.   The agency must do so and then produce the records 'promptly.'"   *Id.* at 189.

An agency may also refer a request to another agency when the request for records originated with the other agency.   14 C.F.R. § 4.5(b).   In that event, the agency that received the request "should typically refer the record to the component or originating agency for direct response to the requester."   *Id.*   An agency that forwards documents to other agencies for review

Page 11 – OPINION AND ORDER

and release does not "withhold documents, either actually or constructively." *South Yuba River Citizens League v. National Marine Fisheries Serv.*, No. 06-2845, 2008 WL 2523819, at *7 (E.D. Cal. June 20, 2008).

NOAA's production fails to meet the statute's "prompt" standard and the interpretation set forth by *CREW*. Once WRLC missed the statutory deadline to make a determination, WRLC was free to file an action in district court without exhausting administrative remedies. After acknowledging WRLC's request in December 2016, NOAA did not provide records for more than seven months. (Sebastian Decl. ¶¶ 3, 7.) The agency issued seven releases from July 2017 until August 2019, with one year passing between the sixth and seventh releases. (Sebastian Decl. Ex. J at 3.) Although an agency may refer a request to another agency, NOAA did not notify WRLC of the specific referral to the Navy until August 2019, more than two years after WRLC submitted its request. As Lobdell supplies in her declaration, NOAA referred the request to the Navy in its final response dated June 2019. (Lobdell Decl. Ex. J at 4.) However, the agency did not provide WRLC the final response until August 2019. (Lobdell Decl. ¶ 18.)

NOAA's contention that WRLC failed to complain about the pace of production and "agreed" to interim response is unpersuasive. The Code of Federal Regulations requires an agency to provide interim responses when a request involves voluminous records. NOAA acknowledged the request would produce voluminous records, which obligates the agency to provide interim responses.

Although the agency relies on the referral regulation to justify some delay, its argument fails because "predictable agency workloads" do not constitute exceptional circumstances that warrant extensions under FOIA. Here, NOAA's FOIA Coordinator acknowledged, "[t]he timeline to produce these responses encountered several delays including review of significant

volume of records for exemption applicability and lengthy consultation and final referral of records with the U.S. Department of Defense (Navy)." (Sebastian Decl. ¶ 33.) Although the regulation requires the agency to refer the record "for direct response to the requester," the WRLC had not received any communication from either agency about the records in the eight months prior to filing its motion. Consequently, the agency's affidavits fail to demonstrate it complied with FOIA's requirement to promptly produce records.[1]

WRLC's motion for summary judgment as to the agency's failure to promptly produce records is granted. As a result, WRLC is entitled to a declaratory judgment.

III.    NOAA Did Not Conduct a Reasonable Search

WRLC alleges NOAA failed to conduct a reasonable search for responsive records. When an agency receives a proper FOIA request, it must make "reasonable efforts" to search for responsive records. § 552(a)(3)(C). An agency may conduct searches through automated or manual means. § 552(a)(3)(D).

A requester is "entitled to a reasonable search for records, not a perfect one." *Hamdan*, 797 F.3d 759, 772 (9th Cir. 2015). An agency must "demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents." *Id.* at 770 (quoting *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985)). Accordingly, a court evaluates the adequacy of an agency's search "by a standard of reasonableness construing the facts in the light most favorable to the requestor." *Citizens Com'n on Human Rights v. FDA.*, 45 F.3d 1325, 1327 (9th Cir. 1995) (citing *Zemansky*, 767 F.2d at 571).

---

[1] On October 7, 2020, NOAA filed a status report informing the court that it provided WRLC with the non-exempt portions of the referred records in September 2020. (ECF No. 51.) This production does not affect the court's analysis of whether NOAA promptly produced records in response to WRLC's 2016 request.

Page 13 – OPINION AND ORDER

An agency may submit "reasonably detailed nonconclusory affidavits" to demonstrate it conducted an adequate search. *Zemansky*, 767 F.2d at 571. "Affidavits justify summary judgment only when they are relatively detailed and nonconclusory." *Papa v. United States*, 281 F.3d 1004, 1013 (9th Cir. 2002). Agency affidavits submitted "to demonstrate the adequacy of its response are presumed to be in good faith." *Hamdan*, 797 F.3d at 770. Thus, a district court appropriately grants summary judgment for a requester when "a review of the record raises substantial doubt" of the search's adequacy. *Id.* at 771.

WRLC contends WRLC's search was inadequate for three reasons. First, WRLC argues NOAA failed to use consistent search terms. Second, WRLC contends the agency should have searched "the cloud" for responsive emails. Third, WRLC argues NOAA failed to identify relevant custodians to conduct searches. According to NOAA, the agency's affidavits demonstrate the agency conducted a reasonable search. Moreover, the agency argues a requester may not direct an agency's search.

A.    *Search Terms*

WRLC contends NOAA's search was inadequate because the agency used improper search terms. "In order to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68. Agency declarations that merely state custodians conducted searches do not adequately detail a search. *See Reporters Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 403-04 (D.C. Cir. 2017).

A court cannot evaluate a search's adequacy without evaluating the agency's search terms. *Parker v. U.S. Immig. & Customs Enf't*, 238 F. Supp. 3d 89, 104 (D.D.C. 2017) ("*Parker I*"). In *Parker I*, the court found an agency employee's statement that stated he searched his "personal

Page 14 – OPINION AND ORDER

Outlook archives" insufficient.  *Id.*  Because the declaration failed to detail the employee's search method, the court could not evaluate the adequacy of the agency's search.  *Id.* Accordingly, the court denied the agency's motion for summary judgment at 105.  *Id.*

A FOIA requester "cannot dictate the search terms for his or her FOIA request," however. *Bigwood v. U.S. Dep't of Defense*, 132 F. Supp. 3d 124, 140 (D.D.C. 2015).  The agency has discretion to draft search terms that are "reasonably calculated to lead to responsive documents." *Id.*  Further, courts have "rejected the proposition that the government must affirmatively explain why every search term proposed by the plaintiff is unnecessary."  *Protect Democracy Project, Inc. v. U.S. Dep't of Energy*, 330 F. Supp. 3d 515, 523 (D.D.C. 2018).

Agencies have "discretion in crafting search terms designed to identify responsive records," but that discretion 'is not boundless.'"  *New Orleans Workers' Ctr. for Racial Just. v. U.S. Immigration & Customs Enf't*, 373 F. Supp. 3d 16, 45 (D.D.C. 2019)(quoting *American. Ctr. for Equitable Treatment, Inc. v. Office of Mgmt. & Budget*, 281 F. Supp. 3d 144, 151 (D.D.C. 2017)(explaining that the district court could not determine if the agency's search was reasonable when most of its custodians only used two search terms or variations of those terms).

Moreover, FOIA does not require an agency to use "consistent search terms and techniques across various departments."  *Judicial Watch v. U.S. Dep't. of Housing & Urban Dev.*, 20 F. Supp. 3d 247, 254 (D.D.C 2014).   In that case, the agency identified several divisions that most likely had responsive documents.  *Id.*  Each division "direct[ed the] FOIA request to the appropriate subject matter experts within their program areas."  *Id.*  The subject matter experts searched for responsive documents "using individualized techniques and search terms."  *Id.*  The court concluded that the agency's declarations were sufficiently detailed and the search was adequate as a matter law.  *Id.* at 255.

Page 15 – OPINION AND ORDER

Although the NOAA's declarations state its custodians searched "in all locations likely to contain responsive records," the agency's methods cast substantial doubt on the search's adequacy. NOAA explains its cascade approach, which sorted custodians in into three hierarchies, was "designed to limit duplication of responsive emails and records from the main record custodian." (Sebastian Decl. ¶ 12.)   The search memorandum instructed custodians that "records sent to or from persons higher on the cascade may be excluded from the search of persons lower in the cascade."   (Sebastian Decl. Ex B at 3.)   Ms. Scholik-Schlomer, the primary author of the Technical Guidance, placed herself at the "top of all three cascades."   (Scholik-Schlomer Decl. ¶ 17.)   In addition, two of the cascades included five employees.   (Sebastian Decl. Ex. B at 3.) Although one custodian was not listed on the cascades, she considered "everyone on the cascade to be higher" than her.   (Bishop Decl. ¶ 10).   Thus, the cascade method limited the responsive records from numerous custodians lower on the cascades, even if custodians higher on the cascade did not locate those same records.   None of the other custodians would have produced any messages to or from Ms. Scholik-Schlomer.

Although FOIA does not require an agency to conduct a perfect search, NOAA's declarations cast further doubt on its search because Ms. Scholik-Schlomer stated she "did not need to perform text searches."   (Scholik-Schlomer Decl. ¶ 14.)   Ms. Scholik-Schlomer explains she had "consistently placed emails related to the Technical Guidance in an email folder" that encompassed all communication from July 1, 2015 to July 31, 2016.   (Scholik-Schlomer Decl. ¶ 14.)   Although another agency declaration indicates Ms. Scholik-Schlomer searched her emails and agency documents using three terms (Rice-Stitt Decl. Ex. B at 4), NOAA's cascade search method does not persuade the court that the search was "reasonably calculated to uncover all relevant documents."   *Hamdan*, 797 F.3d at 770.

Page 16 – OPINION AND ORDER

Despite these shortcomings, NOAA was not required to employ all the search terms WRLC suggested. Here, NOAA's subject matter experts developed a search memorandum that was distributed "to all locations where responsive documents were likely to be found." (Sebastian Decl. ¶ 14.) The memorandum included key portions of WRLC's request, and instructed custodians to employ recommended search terms "singly or in combination." (Sebastian Decl. Ex. B at 2.) Further, the agency's declarations list where each custodian searched, including specific computer folders, and the search terms used. (Rice-Stitt Decl. Ex. B at 3-5.) The memorandum also permitted custodians to apply additional search terms. (Sebastian Decl. Ex. B at 2.) Although FOIA provides agencies latitude to create and apply search terms, NOAA's affidavits ultimately fail to demonstrate the agency conducted a reasonable search to locate responsive records.

B.    *The Cloud*

Instead of instructing custodians to perform individual searches, WRLC argues the agency should have searched "the Cloud." Specifically, WRLC contends that NOAA's search was incomplete and did not locate "double deleted" messages when the agency had the capability to do so. NOAA argues its search was reasonable because it tasked subject matter experts with searching for responsive records.

FOIA does not require an agency to conduct "centralized" searches; rather, an agency may rely on subject matter experts to conduct individualized searches. *Judicial Watch,* 20 F. Supp. 3d at 254. Although the statute does not require an agency to search "every record system," an agency "cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby*, 920 F.2d at 68.

An agency can conduct an adequate search by directing custodians to search their email

Page 17 – OPINION AND ORDER

accounts. *Parker v. U.S. Immigr. & Customs Enf't*, 289 F. Supp. 3d 32, 39 (D.D.C. 2017) (*Parker II*).  Moreover, when an agency lacks an agency-wide policy that dictates how employees must store and organize their emails and records, "it logically follows that one of the people most capable of searching an email account is the custodian of that account, the person responsible for organizing and archiving it." *Id.*

Absent evidence that an agency deliberately deleted responsive documents after it received a FOIA request, an agency is not required to conduct "data recovery operations." *Id.* at 41-42. In *Parker II*, the requester contended the agency's search was unreasonable because a custodian did not search his computer for deleted emails and files. *Id.* at 41.  The requester asserted a data recovery program would locate files that "would not otherwise be identified simply by performing a standard Microsoft or Outlook Search." *Id.*  Because the agency had searched several locations for responsive emails and there was no evidence that files had been deleted, the court determined that agency was not required to perform data recovery operations. *Id.* at 42.

NOAA's decision to task individual custodians with searches does not render the search inadequate.  Although NOAA's FOIA Central Office has the capability to search and gather all NOAA employee emails through a Google Vault application, NOAA determined the request required "subject matter expertise." (Graf Decl. ¶ 4).  FOIA Central Office employees were not trained to determine which records the agency relied on to draft the Technical Guidance.  (Graff Decl. ¶¶ 4-5.)  Moreover, the agency explained that its component offices "do not have the same central search capabilities and do not have permissions to run keyword searches over the email messages of all NOAA employees." (Graff Decl. ¶ 5.)  Thus, OPR instructed its subject matter experts to conduct searches.  (Sebastian Decl. ¶ 9.)  Although WRLC submitted NOAA's "Enterprise Messaging Policy" and the agency's "Unified Service Operational Procedures" as

Page 18 – OPINION AND ORDER

evidence of the agency's capabilities (Decl. Paul Price Exs. B-C, ECF No. 43), these documents fail to demonstrate an agency-wide policy that instructs employees how to organize their emails and records.   Accordingly, the agency was within its discretion to task subject matter experts with the search. *Parker II*, 289 F. Supp. 3d at 39.

Because WRLC has not made any allegations of extraordinary circumstances, such as the destruction of records after the request, the agency's affidavits adequately justify its use of subject matter experts to conduct the search.

C. *Custodians*

Last, WRLC contends the agency's search was inadequate because the agency did not identify all relevant custodians.   WRLC argues dozens of NOAA employees likely have responsive records, but the agency only asked ten custodians to search for records.   NOAA contends WRLC's assertions are merely speculative, and that WRLC may submit a separate FOIA request for any new leads.

"[T]he government is not required to search everywhere a document *might be*.   Instead, it is required to search only those places where a document is *likely* to be." *Judicial Watch*, 20 F. Supp. 3d at 254.   For example, a court found an agency's search inadequate when it unreasonably limited the number of custodians in its search. *Husch Blackwell LLP v. EPA*, 442 F. Supp. 3d 114, 121-22 (D.D.C. 2020).   In *Husch Blackwell*, the requesters sought communications involving six agency employees and six non-employees. *Id.* at 121.   The agency only searched the records of the six employees listed in the request. *Id.*   There, the court found the search inadequate because the search would only produce communications between the non-employees and the six employee custodians. *Id.*   Any communications with other employees would be excluded. *Id.*   The *Husch Blackwell* court denied the agency's motion for summary judgment as

Page 19  – OPINION AND ORDER

to its search because "the agency fell short of its obligation to run searches that would be reasonably expected to produce the information requested.'"  *Id.* at 122.

NOAA fails to establish that it identified all relevant custodians because its declarations do not adequately explain why it limited the search to certain custodians.  WRLC requested "correspondence concerning the Technical Guidance" sent or received by sixteen individuals, nine of whom were identified as agency employees, and four of whom WRLC identified as Navy employees.  (Sebastian Decl. Ex. A at 2.)  Eight of the listed employees searched for responsive documents, as well as two additional employees that WRLC did not identify.  (Sebastian Decl. ¶¶ 20-23.)  NOAA explained why it excluded one employee, but not other listed individuals. According to NOAA, one agency employee listed in WRLC's request "was not involved in the technical guidance."  (Harrison Decl. ¶ 8.)  In another declaration, the same employee's supervisor stated the employee did not have any records the supervisor did not possess, and asked OPR to remove him from further FOIA correspondence.  (Sebastian Decl. ¶ 10.)

Moreover, NOAA's cascade search method calls the agency's custodian selection further into question. For example, one employee from the cascade that "covers Navy issues" acknowledged WRLC requested records involving additional individuals, and stated, "[i]f I had any relevant communications with these individuals, the search process I used likely would have uncovered them."  (Gedamke Decl. ¶ 12.)  However, the agency's cascade search method was designed to exclude responsive records from custodians lower on the cascades.  Thus, if that employee located any correspondence from non-custodians that also included Ms. Scholik-Schlomer, pursuant to the cascade methodology employed by NOAA, the employee would not produce those records presumably because they would have been produced by Ms. Scholik-Schlomer.  However, Ms. Scholik-Schlomer, who was at the top of all three cascades, stated that

Page 20  – OPINION AND ORDER

she conducted few, if any, any searches.   Therefore, the agency's declarations do not convince the court the agency searched all locations where responsive records were likely to be.

Accordingly, WRLC's motion for summary judgment as to the reasonableness of the agency's search is granted, and NOAA's motion is denied.   NOAA is ordered to conduct a search, without regard to the cascade, within thirty days.   Custodians must produce all responsive records, even if individuals higher on the cascades received or sent those records.   If NOAA locates records it intends to withhold, the agency must provide WRLC with a declaration that specifically describes the records and states the justification for withholding those records.

IV.    NOAA Produced an Inadequate Vaughn Index

WRLC argues NOAA's *Vaughn* index fails to justify the records the agency withheld. NOAA contends it properly withheld two documents and partially redacted thirty-three documents.   (Rice-Stitt Decl. Ex. D at 1-2.)

FOIA exempts certain records from disclosure.   5 U.S.C. § 552(b)(1)-(9).   An agency bears the burden of justifying its exemptions.   *Id.* § 552(a)(4)(B).   To satisfy this burden, an agency "must offer oral testimony or affidavits that are 'detailed enough for the district court to make a *de novo* assessment of the government's claim of exemption.'"   *Maricopa Audubon Soc. v. U.S. Forest Service*, 108 F.3d 1089, 1092 (9th Cir 1997) (quoting *Doyle v. FBI*, 722 F.2d 554, 555-56 (9th Cir. 1983)).   Courts may give, however, "considerable deference to agency affidavits made in apparent good faith where the affidavits reasonably describe the justifications for nondisclosure and show that the content withheld falls within one of FOIA's exemptions." *Hamdan*, 797 F.3d at 772.

The Ninth Circuit evaluates a disclosure's substance, not its form.   *Fiduccia v. U.S. Dep't of Justice*, 185 F.3d 1035, 1044 (9th Cir. 1999).   When an agency denies a request, FOIA requires

Page 21  – OPINION AND ORDER

the agency to justify the denial "with a sufficiently detailed description of what it is refusing to produce and why so that the requester and the court can have a fair idea what the agency is refusing to produce and why." *Id.* at 1042. "The agency must disclose as much information as possible without thwarting the purpose of the exemption claimed." *Citizens Comm'n on Human Rights v. FDA,* 45 F.3d 1325, 1328 (9th Cir. 1995).

FOIA does not require an agency to provide a *Vaughn* index or affidavit whenever it withholds records. *Fiduccia*, 185 F.3d at 1042. *See* § 552. Instead, the statute requires an agency to notify the requester of the determination and the agency's reasoning. § 552(a)(6)(A)(I). "What matters is the substantive adequacy of the disclosures, in whatever form, to enable the requester to be able to make an intelligent judgment whether to contest claims of nondiscoverabilty and the court to decide them." *Fiduccia*, 185 F.3d at 1044.

Moreover, the Ninth Circuit imposes different disclosure obligations when agencies redact documents and when they withhold documents. *Id.* at 1043. When an agency withholds an entire document, a *Vaughn* index "of considerable specificity" appropriately informs the requester of "what the agency possesses but refuses to produce." *Id.* The document should "afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate opportunity to review, the soundness of the withholding." *Id.* at 1042 (quoting *Wiener v. FBI*, 943 F.2d 972, 977 (9th Cir. 1991)). Further, an affidavit "may be necessary to verify the agency has nothing more in its possession than what it has described." *Id.* at 1043. But when an agency redacts documents and leaves sufficient context for a requester to surmise the type of information redacted, an affidavit and *Vaughn* index "may be a superfluity." *Id.* A "redacted document may be less work for an agency and more useful to the requester and the court than a *Vaughn* index or affidavit." *Id.*

Page 22 – OPINION AND ORDER

NOAA's *Vaughn* index fails to adequately inform WRLC of the records it fully withheld. The agency withheld two documents under §552(b)(5) as "legal advice and review." (Graff Decl. Ex. D at 4.) The agency states it fully redacted two documents because they "include privileged comments" from an agency attorney "regarding drafts of the Technical Guidance" (Graff Decl. ¶ 27), a 178-page document. Although NOAA has stated it "has determined that there is no further reasonably segregable information to be released and all segregable information has been released to Plaintiff" (Graff Decl. ¶ 30), the agency's index and declarations fail to give WRLC a "meaningful opportunity" to contest the withholding. The *Vaughn* index lacks any description of the documents, and the mere file names do not provide WRLC sufficient information to make an "intelligent judgment." Even though the agency produced the withheld records' "parent emails" and a "heavily-redacted version" of the withheld records (Graff Decl. ¶ 27), the agency failed to provide specific descriptions to justify the full redactions.

The agency's *Vaughn* index does provide, however, sufficient detail to supplement partially redacted records. The index lists each fully or partially redacted document's identification number, file name, subject, sender, recipients, date, and attachments. (Graff Decl. Ex. D at 3.) According to the index, one document lacked a subject and recipient because it was an attachment to an email between an agency lawyer and employee. (Graff Decl. Ex. D at 2.) NOAA produced the partially redacted e-mail to which the document was attached. (Graff Decl. Ex. D at 2.) In tandem, the index and the partially redacted communications allow WRLC to surmise the information redacted. Although the agency adequately described its partially redacted records, NOAA's *Vaughn* index ultimately fails to justify the records it fully withheld.

Thus, as to the adequacy of defendant's *Vaughn* index, WRLC's motion is granted in part and denied in part. The court orders NOAA to submit a declaration to WRLC within thirty days

Page 23 – OPINION AND ORDER

that specifically describes the documents the agency fully withheld and states the justification for withholding those records.

*Conclusion*

Based on the foregoing, WRLC's motion for summary judgment (ECF No. 38) is GRANTED IN PART as set forth above; NOAA's motion for summary judgment (ECF No. 28) is DENIED IN PART as described above.

NOAA is to conduct a search, without regard to the cascade, within thirty days. Custodians must produce all responsive records, even if individuals higher on the cascades received or sent those records.   If NOAA locates records it intends to withhold, the agency must provide WRLC with a declaration that specifically describes the records and states the justification for withholding those records.   NOAA also is to submit a declaration to WRLC within thirty days that specifically describes the documents the agency fully withheld, and which states the justification for withholding those records.

IT IS SO ORDERED.

DATED this _20th_ day of November, 2020.

JOHN V. ACOSTA
United States Magistrate Judge